# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BARBARA L. MULVANEY,

    Plaintiff,

-vs-                                                            No. CIV 98-1137 JC/LFG

NEW MEXICO ATTORNEY
GENERAL'S OFFICE, THOMAS UDALL
and MANUEL TIJERINA,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment, filed June 7, 1999 *(Doc. 40)*. Defendants request oral argument on this motion. I find that oral argument is not necessary to decide the Motion for Summary Judgment, so Defendants' request for oral argument will be denied.[1]

## I.    Background

This is an employment case brought for money damages arising out of an alleged wrongful and retaliatory discharge and gender discrimination resulting in the termination of Plaintiff from the New Mexico Attorney General's Office (AGO) on December 2, 1996. Ex. A, Am. Compl. for Damages at 1-2 (attached to Notice of Removal, filed Sept. 16, 1998 *(Doc. 1)*). Defendants are the AGO, Thomas Udall (the New Mexico Attorney General during the time at issue), and Manuel Tijerina (the Deputy Attorney General at that time). *Id*.

---

[1] In addition to sworn affidavits, Plaintiff also presents unsworn declarations signed under penalty of perjury to defend against this Motion for Summary Judgment. Contrary to Defendants' assertions, such unsworn declarations may be substituted for affidavits. 28 U.S.C. § 1746. *See also Burgess v. Moore*, 39 F.3d 216, 217-18 (8th Cir. 1994).

In October 1990, former New Mexico Attorney General Hal Stratton hired Plaintiff as a lawyer in the Prosecutions and Investigations Division of the AGO. *Id*. at 2. In the spring of 1993, Defendant Udall promoted Plaintiff to the position of Director of the Prosecutions Division.[2] *Id*. In 1995, female attorneys from Plaintiff's division and female investigators from the Investigations Division of the AGO brought complaints to Plaintiff concerning sexual harassment and discrimination. *Id*. at 3. Plaintiff transmitted those complaints to Defendants Udall and Tijerina. *Id*. As a result of these complaints, Defendant Udall brought in an outside investigator, Laquita Hamilton, to report on the extent of sexual harassment and discrimination occurring at the AGO. Ms. Hamilton found that "there were no consistent themes specifically related to gender. Interestingly enough, none of the subjects indicated that there was any bias in hiring females or that females were under represented in the office." March 25, 1994 Mem. (attached to Aff. of Tom Udall, filed May 11, 1999 *(Doc. 32)*). Plaintiff contends that the sexual harassment and discrimination complaints continued after Ms. Hamilton completed her investigation. Am. Compl. for Damages at 3.

In 1995, Plaintiff also presented to Defendants statistics on the declining generation of cases by the Investigations Division.[3] *Id*. at 4-5. In the fall of 1995, Plaintiff shared these statistics with Marilyn Painter, Investigative Reporter Larry Barker's assistant, who was investigating the alleged lack of productivity and mismanagement at the AGO. *Id*. at 6. AGO staff had been instructed to cooperate with Mr. Barker and his staff. Before Thanksgiving Day in 1995, Mr. Barker aired a

---

[2] The Prosecutions and Investigations Division was subsequently divided into the Prosecutions Division and Investigations Division.

[3] The Prosecutions Division's workload is generally dependent on the cases generated by the Investigations Division.

segment on television which used the statistics Plaintiff had shared with Ms. Painter. The segment was not meant to be flattering to the AGO.

In early December 1996, Defendants met with Plaintiff and two other division directors, one female and one male, regarding their performances as division directors. At the meeting with Plaintiff, Defendant Udall indicated that he was not satisfied with Plaintiff's performance as a manager. Apparently, the option of resignation came up, and Defendant Udall mentioned that it would look bad if Plaintiff left soon after the Barker airing. Plaintiff became upset and left the meeting under the impression she had been fired. A less knowledgeable male attorney replaced Plaintiff several months later.

The other two meetings with division directors had different results. The female division director convinced Defendant Udall to let her have a second chance. She stayed on as a division director after showing improvement in her performance. The male division director agreed to simply be demoted to a line attorney.

Count I of Plaintiff's Amended Complaint for Damages is for retaliatory gender discrimination based on the allegation that Defendants dismissed Plaintiff because she reported to Defendants Udall and Tijerina sexual discrimination in the AGO and "raised similar complaints as to her working relationship with certain investigators and Defendant Tijerina. . . ." Am. Compl. for Damages at 3. Count II asserts that Defendants retaliated against Plaintiff for exercising her First Amendment rights when she communicated with Ms. Painter. *Id*. at 7. Count III alleges that "Defendants breached the AGO's disciplinary policies by dismissing Plaintiff without notice, cause and an opportunity to correct perceived problems. . . ." *Id*. at 8.

Defendants argue that summary judgment is appropriate on several grounds. First, Defendants Udall and Tijerina argue that they are entitled to qualified immunity with respect to Plaintiff's First Amendment and 42 U.S.C. § 1983 sex discrimination claims. Second, Defendants argue that any Title VII claim of sex discrimination fails for two reasons. Defendants assert that Title VII exempts members of an elected official's personal staff from coverage and the Equal Employment Opportunity Commission (EEOC) complaint was untimely filed. Third, Defendants argue that there is no claim against Defendant Tijerina since only Defendant Udall had the authority to fire Plaintiff. Finally, Defendants argue that the AGO is immune from suit under the Eleventh Amendment.

## II. Standard for Summary Judgment

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). Under FED. R. CIV. P. 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *Thrasher v. B & B Chemical Co., Inc.*, 2 F.3d 995, 996 (10th Cir. 1993). The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant meets this burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### III. Discussion

#### A. Qualified Immunity

Defendants argue first that Defendants Udall and Tijerina are entitled to qualified immunity in connection with Plaintiff's First Amendment claims concerning Mr. Barker's investigative report and Plaintiff's reporting of sexual discrimination and harassment. Having carefully read the Amended Complaint for Damages, it appears that Plaintiff's only First Amendment claim concerns Plaintiff's interview with Ms. Painter. The Amended Complaint for Damages does not allege a First Amendment claim based on Plaintiff's reporting of sexual discrimination and harassment. Accordingly, I will only address the First Amendment qualified immunity issue in the context of Plaintiff's interview with Ms. Painter.

Qualified immunity will shield a defendant from liability under 42 U.S.C. § 1983 if his actions did not "violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once the defendant pleads qualified immunity, the burden shifts to the plaintiff to demonstrate (1) the defendant's conduct violated the law, and (2) the relevant law was clearly established when the alleged violation occurred." *Migneault v. Peck*, 158 F.3d 1131, 1139 (10th Cir. 1998), *vacated on other grounds*, ___ U.S. ___, 2000 WL 29245 (2000); *see Anderson v. Creighton*, 483 U.S. 635, 640 (1987). If Plaintiff fails to demonstrate that Defendants Udall and Tijerina's conduct violated the law, I need not determine whether the law was clearly established. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir.1993).

The first issue to be addressed then is whether Plaintiff can show that Defendants Udall and Tijerina violated her First Amendment rights by allegedly firing her after she spoke with Ms. Painter about the prosecution statistics. As a preliminary matter, Defendants contend that Plaintiff was not fired on December 2, 1996 and that they were only going to demote her at that time. The Tenth Circuit has implied a broad definition of First Amendment retaliation, rejecting the notion that only adverse employment decisions, such as termination, suspension, or transfer, can result in illegal retaliation. *Morfin v. Albuquerque Public Schs.*, 906 F.2d 1434, 1437 n.3 (10th Cir. 1990). Actions short of an actual or constructive employment decision can in some circumstances violate the First Amendment. *Id*. Indeed, "'[a]dverse employment action' is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands." *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994). Consequently, whether Plaintiff was fired or whether Defendants intended to only demote her is immaterial in deciding whether Plaintiff has demonstrated First Amendment retaliation.

First Amendment retaliation claims are analyzed using the four-step test derived from *Pickering v. Board of Ed. of Tp. High Sch. Dist. 205,* 391 U.S. 563 (1968), and *Connick v. Myers*, 461 U.S. 138 (1983). The court must determine: 1) whether the employee's speech can be fairly characterized as constituting speech on a matter of public concern, 2) whether the employee's interest in commenting on matters of public concern outweighs the interest of the state in promoting the efficiency of the public service it provides, 3) whether the protected speech was a substantial factor in the detrimental employment decision, and 4) assuming the first three factors have been met, whether the defendant has met its burden to show it would have acted in the same manner even without the existence of the protected conduct. *See Gardetto v. Mason*, 100 F.3d 803, 811

(10th Cir.1996). The first two steps are legal questions to be resolved by the Court, the third and fourth steps concern causation and are factual questions to be resolved by the jury. *Id*.

Both the Supreme Court and the Tenth Circuit have held that, "[t]o be protected, employee speech must involve a matter of public concern." *Paradis v. Montrose Memorial Hosp.*, 157 F.3d 815, 817 (10th Cir. 1998) (citing *Connick*, 461 U.S. at 146). Matters of public concern include those issues fairly related to political, social, or other concerns to the community raised by a citizen. *Id*. A "fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen." *David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996), *cert. denied*, 522 U.S. 858 (1997) (citing *Connick*, 461 U.S. at 147). *See also Schalk v. Gallemore*, 906 F.2d 491 (10th Cir. 1990). An employee speaks as a citizen if his speech is based on the same motivation that would compel the public to speak. *Gardetto*, 100 F.3d at 812. To decide if an employee's speech involves matters of public concern the court must examine the subjective intent of the speaker. *Schalk*, 906 F.2d at 495. In considering an employee's motive in speaking out, courts must weigh the content, form and context of the speech in light of the whole record before them. *Id*. For instance, the violation of internal policy guidelines by another governmental employee is not, in itself, a matter of public concern but rather one of internal interest. *See Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988). Moreover, the fact that the speech at issue occurred during the course of an employee's official duties may weigh against a conclusion that the statements involve matters of public concern. *Considine v. Board of County Comm'rs of County of Adams, State of Colo.*, 910 F.2d 695, 700 (10th Cir.1990). Furthermore, "it is not enough that the topic of the speech be of general interest to the public; in addition, what is *actually said* must be meet the public concern threshold." *Schalk*, 906 F.2d at 495 (citations omitted).

Plaintiff in this case participated in the Barker interview at the request of Defendant Udall's press secretary and was held in an AGO conference room near the front office during office hours. Plaintiff's stated reason for giving the productivity statistics to Ms. Painter was to defend the Prosecutions Division by demonstrating its increased caseload despite the lack of productivity in the Investigations Division. Dep. of Barbara L. Mulvaney at 155-57 (attached to Defs.' Reply Br. in Supp. of Mot. for Summ. J., filed June 7, 1999 *(Doc. 44))*. Plaintiff's interview with Ms. Painter was clearly made during the course of her official duties as an employee, not as a citizen. The statistics concerned work distribution in the AGO, an internal matter. Plaintiff also made no allegation that the AGO's case productivity levels constituted illegal conduct. *Compare Conaway*, 853 F.2d at 795. Nor did Plaintiff allege that the low case productivity in any way related to public health or safety. *Compare Johnsen v. Independent Sch. Dist. No. 3 of Tulsa County, Okl.*, 891 F.2d 1485, 1490 (10th Cir. 1989) (school medication policy); *Conaway*, 853 F.2d at 796 (substandard electrical work). Although Plaintiff's statistics might be considered of general interest to the public, I simply cannot find that Defendants' policy of low case productivity rose to "a potential or actual wrongdoing or breach of public trust on the part of [a public officer]." *Connick*, 461 U.S. at 148. Consequently, I find as a matter of law that Plaintiff's interview with Ms. Painter did not constitute a speech on matters of public concern. It is, therefore, unnecessary to discuss the other remaining factors examined in analyzing First Amendment retaliation claims. *See Lancaster v. Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1234 (10th Cir. 1998). Since I find that Defendants Udall and Tijerina did not engage in First Amendment retaliation, they are entitled to qualified immunity on that claim.

**B. Qualified Immunity Regarding 42 U.S.C. § 1983 Sex Discrimination Claim**

Defendants argue secondly that Defendants Udall and Tijerina are entitled to qualified immunity from suit based on a § 1983 sex discrimination claim. Plaintiff's sex discrimination claim, however, is based only on Title VII, not § 1983. Plaintiff's Amended Complaint states at ¶ 6 that "[t]his Court has jurisdiction pursuant to 42 U.S.C. § 2000e [Title VII] and 42 U.S.C. § 1983-1st Amendment to U.S. Const." Plaintiff's § 1983 claim is her First Amendment retaliation claim, not her sex discrimination claim. Accordingly, Defendants' qualified immunity argument based on a § 1983 sex discrimination claim is without merit.

**C. The Personal Staff Exemption to Title VII**

Defendants argue next that Title VII does not apply to Plaintiff under the personal staff exemption found at 42 U.S.C. § 2000e(f).[4] Section 2000e(f) states as follows:

> The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, <u>or any person chosen by such officer to be on such officer's personal staff</u>, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence <u>shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision</u>. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

(Emphasis added.) The Tenth Circuit Court of Appeals has held that the following "nonexhaustive list of factors" should be considered in determining if the personal staff exception applies:

> '(1) whether the elected official has plenary powers of appointment and removal,
> (2) whether the person in the position at issue is personally accountable to only that

---

[4] Plaintiff mistakenly believes that the Government Employee Rights Act (GERA) provides that Title VII applies to all government workers. In fact, GERA allows only federal employees to sue under Title VII for alleged sex discrimination. *See* 2 U.S.C. § 1202(a)(1) (citing 42 U.S.C. § 2000e-16).

elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.'

*Nichols v. Hurley*, 921 F.2d 1101, 1110 (10th Cir. 1990) (quoting *Teneyuca v. Bexar County*, 767 F.2d 148, 151 (5th Cir. 1985)).[5] The first five factors can be measured rather objectively while the sixth factor is subjective. The Court in *Nichols* further noted that policy making or advising are not pertinent factors to the personal staff exception nor is the inability "to hire people, buy equipment or direct the placement of manpower. . . ." *Id*. at 1111, 1114.

In New Mexico, the attorney general appoints assistant attorneys general who serve at the pleasure of the attorney general. NMSA 1978, § 8-5-5 (1933). *See also* Ex. F, "Exempt" Position Statement, dated Oct. 22, 1990 (attached to Defs.' Surreply Br. in Support of Mot. for Summ. J., filed Oct. 21, 1999 *(Doc. 57)*). The attorney general also fixes the salaries paid to the assistant attorneys general. NMSA 1978, § 8-5-5 (1933). In addition, "subject to the direction of the attorney general, [assistant attorneys general] have the same power and authority as the attorney general." *Id*. In fact, Plaintiff and the other assistant attorneys general were permitted to speak to the press on behalf of the attorney general on the courthouse steps. Plaintiff in particular was permitted to speak to the press at other times when Defendant Udall's press secretary requested her to do so. *See, e.g.,* Dep. of Barbara L. Mulvaney at 148-49 (attached to Defs.' Reply Br. in Support of Mot. for Summ. J., filed June 7, 1999 *(Doc. 44)*). Furthermore, Plaintiff articulated Defendant Udall's policy

---

[5] Although *Nichols* examines the definition of "employee" under the Fair Labor Standards Act, that definition of "employee" "is essentially identical to that under Title VII." *Nichols*, 921 F.2d at 1103. Accordingly, the Court in *Nichols* "look[ed] to both the legislative history of Title VII and cases interpretive of the 'personal staff' exception under Title VII for guidance." *Id.* (citing *Brewster v. Barnes*, 788 F.2d 985, 990 and n.7 (4th Cir. 1986)).

at public meetings, voted on his behalf while serving on certain committees, spoke to the legislature on behalf of Defendant Udall, and acted as a liaison between the AGO and the state district attorneys. Ex. A, Dep. of Tom Udall at 13, 16 (attached to Defs.' Surreply Br. in Support of Mot. for Summ. J., filed Oct. 21, 1999 *(Doc. 57)*); Ex. A, Dep. of Manuel Tijerina at 19 (attached to Pl.'s Supplement in Opp'n to Defs.' Mot. for Summ. J., filed Oct. 7, 1999 *(Doc. 56)*). It is clear from the facts that Plaintiff did not make policy *per se* but implemented Defendant Udall's policies[6] and prosecuted or continued to prosecute cases at ultimately Defendant Udall's direction. Moreover, although Plaintiff supervised five attorneys, one paralegal and a receptionist, she could not fire or hire personnel in her division. Ex. A, Dep. of Tom Udall at 18 (attached to Defs.' Surreply Br. in Supp. of Mot. for Summ. J., filed Oct. 21, 1999 *(Doc. 57)*). Finally, Plaintiff's position in the chain of command was rather high. Only Defendant Tijerina had a higher position than she did.

The above undisputed facts demonstrate that Defendant Udall, an elected official, had plenary powers of appointment and removal. Those facts also indicate that Plaintiff was personally accountable to only Defendant Udall and represented Defendant Udall in the eyes of the public. The facts further indicate that Defendant Udall exercised considerable control over Plaintiff's position as division director, a position fairly high within the AGO's chain of command. These facts alone demonstrate that the personal staff exception should probably apply. Accordingly, the burden now shifts to Plaintiff to show that there is a material issue of fact "as to the true nature of her relationship with the elected official in question, i.e., that it was in fact other than that implied by the defendant's evidence." *Nichols*, 921 F.2d at 1111 (citing *Teneyuca*, 767 F.2d at 152). In other words,

---

[6] "[T]he function of an elected official's personal staff could be to implement his policies in the manner he desires, rather than help him formulate those policies." *Nichols*, 921 F.2d at 1113.

Plaintiff must demonstrate that there was not an actual intimacy in her working relationship with Defendant Udall.

Examining the facts presented by the parties, it is undisputed that Plaintiff would frequently meet with Defendant Udall twice a week for division director meetings and criminal case meetings. Defendant Udall utilized the division director meetings to obtain input from the division directors on possible policy making decisions. The criminal case meetings involved deciding what cases to prosecute or continue to prosecute and often contained discussions of sensitive information. Ex. A, Dep. of Tom Udall at 25 (attached to Defs.' Surreply Br. in Support of Mot. for Summ. J., filed Oct. 21, 1999 *(Doc. 57))*. Defendant Udall trusted that Plaintiff would present correct factual information at these meetings and make recommendations about the proposed prosecutions or continuation of prosecutions. *Id*. at 26-27. Plaintiff also brought some sexual discrimination and harassment complaints directly to Defendant Udall's attention. *See, e.g.,* Ex. A, Aff. of Barbara Mulvaney at ¶ 9 (attached to Pl.'s Resp. to Defs.' Mot. for Summ. J., filed June 7, 1999 *(Doc. 43))*. Moreover, Plaintiff met with Defendant Udall frequently to organize the Domestic Violence Task Force and prepare for a state-wide conference on domestic violence. *Id*. at ¶ 12. These undisputed facts demonstrate that Plaintiff had an intimate working relationship with Defendant Udall. Consequently, I cannot find that Plaintiff carried her burden of showing otherwise. I find that the personal staff exception applies to Plaintiff and she is, therefore, not entitled to the protections afforded by Title VII. Having made this determination, there is no need for me to address the issue of the timeliness of Plaintiff's EEOC complaint.

### D. Claims Against Defendant Tijerina

Defendants further argue that any claims against Defendant Tijerina are invalid because, assuming Plaintiff was fired, by law and practice he did not have the authority to fire Plaintiff. Defendants assert that only Defendant Udall could fire Plaintiff. Since the Court has already found that qualified immunity is appropriate on the First Amendment claim and summary judgment should be granted on the Title VII claim, the only remaining claim in this suit is the breach of disciplinary policy claim. That last claim does not allege that Defendant Tijerina should not have fired Plaintiff but rather that he breached the AGO's progressive disciplinary policy. Apparently, Defendant Udall's subordinates could engage in lesser disciplinary measures than termination. Ex. A, Dep. of Tom Udall at 18 (attached to Defs.' Surreply Br. in Support of Mot. for Summ. J., filed Oct. 21, 1999 *(Doc. 57)*); Ex. E, Dep. of Rhonda Mitchell at 23 (attached to Pl.'s Supplement in Opp'n to Defs.' Mot. for Summ. J., filed Oct. 7, 1999 *(Doc. 56)*). Accordingly, Defendants' argument that Defendant Tijerina should be dismissed because of his lack of authority to fire personnel is without merit with respect to the remaining breach of disciplinary policy claim.

### E. Eleventh Amendment Immunity and Defendant AGO

Defendants contend that the AGO as an arm of the state is protected from suit pursuant to the Eleventh Amendment. Plaintiff contends that she is bringing only the Title VII claim against the AGO. Pl.'s Resp. to Defs.' Mot. for Summ. J. at 38, filed June 7, 1999 *(Doc. 43))*. That being so, the AGO cannot assert Eleventh Amendment immunity. *See Mascheroni v. Board of Regents of Univ. of Cal.*, 28 F.3d 1554, 1560 n.6 (10th Cir. 1994) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)). Defendants' Eleventh Amendment immunity grounds for summary judgment is, therefore, without merit.

F.  **Breach of Disciplinary Policy**

All that remains of this lawsuit then is the breach of disciplinary policy claim. This is not a constitutional or federal claim but rather a state claim. At this juncture, this Court has dismissed all claims over which it has original jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), this fact justifies a refusal to exercise supplemental jurisdiction over the sole remaining state law claim. I, therefore, decline to exercise supplemental jurisdiction over this last claim and will remand the breach of disciplinary policy claim.

Wherefore,

IT IS ORDERED that Defendants' Motion for Summary Judgment, filed June 7, 1999 *(Doc. 40)* is **granted in part** in that Count I (Title VII sex discrimination) and Count II (First Amendment retaliation) are **dismissed** with prejudice, and Count III (breach of disciplinary policy) is **remanded** to the First Judicial District Court of New Mexico, County of Santa Fe. This case will, therefore, be terminated in its entirety.

IT IS ALSO ORDERED that Defendants' request for oral argument is **denied**.

DATED this 27th day of January, 2000.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | Paul J. Kennedy |
| | Mary Y. C. Han |
| | Albuquerque, New Mexico |
| | |
| Counsel for Defendants: | Judith C. Herrera |
| | Herrera, Long & Pound |
| | Santa Fe, New Mexico |